UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
REGINALD V. FERGUSON,

            Plaintiff,

        v.

PARK SLOPE FOOD CO-OP, and         **DECISION & ORDER**
JOHN HOLTZ, in his individual         21-CV-347 (WFK) (TAM)
and official capacity,

            Defendants.
-------------------------------------------------------------X

Reginald Ferguson ("Plaintiff") brings the instant action against Park Slope Food Co-Op and Joe Holtz[1] (collectively, "Defendants"), alleging race discrimination in violation Title VII, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Before the Court is Defendants' motion to dismiss. ECF No. 22. For the following reasons, the Court GRANTS Defendants' motion, DISMISSES Plaintiff's Title VII claims, and DECLINES to exercise supplemental jurisdiction over Plaintiff's remaining state and municipal law claims.

## Background

The following facts are drawn from Plaintiff's Amended Complaint and are presumed true for purposes of the Court's analysis. Plaintiff brings the instant action following the termination of his membership with the Park Slope Food Co-Op ("PSFC") on or about January 23, 2020. Am. Compl. ¶ 13.

PSFC is a member-owned and operated food store. *Id.* ¶ 17. Members "agree to work in various capacities" at PSFC "in various forms of labor." *Id.* ¶ 22. Member tasks include "stocking shelves, cleaning produce, operating cash registers, bagging groceries, assisting customers, and ordering of goods." *Id.* ¶ 23. Only members may shop at PSFC. *Id.* ¶ 19. Plaintiff alleges shopping at PSFC carries "definitive monetary value" because "the food and

---

[1] Plaintiff's Amended Complaint refers to Holtz as "John Holtz," but Holtz's first name is Joe. Def's Mem. in Support of Mot. to Dismiss at 1 n.1.

1

goods sold at Defendant PSFC are sold at prices that are far less than those at local grocery stores in the geographic area." *Id.* ¶¶ 27-28.

PSFC members "are divided into Teams to run the operations of Defendant PSFC in shifts, and each Team is led by a Squad Leader." *Id.* ¶ 24. "Squad Leaders act as supervisors of their respective Teams" and "are also responsible for the efficient and effective operation of Defendant PSFC during their respective shifts." *Id.* ¶¶ 25-26.

Plaintiff alleges he was a PSFC member for decades, "eventually being elevated to the position of Squad Leader." *Id.* ¶ 12. As part of his Squad Leader role, Plaintiff was responsible for the music played during his shift. *Id.* ¶ 34. Plaintiff typically selected R&B, soul, and rap music during his shifts. *Id.* ¶ 35. Plaintiff alleges on or about September 16, 2017, he was serving as Squad Leader "of his cadre of volunteers" when a team member "aggressively addressed Plaintiff" regarding his choice of music and the volume at which it was being played. *Id.* ¶¶ 30, 36-37. Plaintiff alleges this team member "questioned Plaintiff in a manner that was purposefully targeted at Plaintiff's race and color" and "chided" Plaintiff about his music preference "because [the team member] did not like 'black' music." *Id.* ¶¶ 38-39. According to Plaintiff's Amended Complaint, "this attack on Plaintiff was racially charged, and [Plaintiff] felt targeted due to the color of his skin." *Id.* ¶ 41. Plaintiff then "engaged this Team member in a debate over the appropriateness of Plaintiff's musical stylings." *Id.* ¶ 42.

Following this alleged incident, Plaintiff complained to PSFC's upper management, which "took the contrary position to its stated goal of inclusion and reprimanded Plaintiff for engaging in such an exchange with this team member." *Id.* ¶ 44. PSFC and Defendant Holtz, who is PSFC's general manager, "then proceeded to initiate formal disciplinary procedures against Plaintiff arising out of the September 16, 2017 [sic], but took no formal action of

2

reprimand against the aggressive Team member who initially confronted Plaintiff over the music that day." *Id.* ¶ 45.

Plaintiff alleges PSFC's disciplinary process was a "sham" and that PSFC "ignored" other PSFC members who voiced concerns about its disciplinary inquiry into Plaintiff. *Id.* ¶¶ 57-63. On or about January 23, 2020, more than two years after the music-related incident, Defendants informed Plaintiff the disciplinary process was complete and they determined Plaintiff "engaged in '[e]xtremely [u]ncooperative [b]ehavior.'" *Id.* ¶ 64. Defendants then terminated Plaintiff's PSFC membership. *Id.* ¶ 65.

Following the termination of his membership, Plaintiff filed an administrative complaint with the New York City Commission of Human Rights ("NYCCHR"). *Id.* ¶ 7. In November 2020, NYCCHR issued Plaintiff a Notice of Right to Sue. *Id.* ¶ 8. However, Plaintiff did not file a charge with the Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights ("NYSDHR"). *See id.* ¶¶ 5-9; Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Pl.'s Mem.") at 9.

Proceeding *pro se*, Plaintiff initiated the instant action by filing a complaint on January 20, 2021. *See* ECF No. 1. Plaintiff subsequently retained counsel and the Court granted Plaintiff leave to re-file an amended complaint. Plaintiff then filed an Amended Complaint on June 3, 2021. *See* ECF No. 12.

In his Amended Complaint, Plaintiff brings discrimination, harassment, and retaliation claims against Defendant PSFC under Title VII, the NYSHRL, and the NYCHRL. Am. Compl. ¶¶ 79-185. Plaintiff also brings discrimination, harassment, and retaliation claims against Defendant Holtz under the NYSHRL and NYCHRL. Am. Compl. ¶¶ 186-250.

3

**Legal Standard**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (quoting *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Vengalattore*, 36 F.4th at 102. "The plausibility standard under Rule 12(b)(6) requires more than a sheer possibility that a defendant has acted unlawfully, and determining whether a complaint meets this standard is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Han v. Shang Noodle House, Inc.*, 20-CV-2266 (PKC) (VMS), 2022 WL 4134223, at *3 (E.D.N.Y. Sept. 12, 2022) (Chen, J.) (quoting *Vengalattore*, 36 F.4th at 102).

In considering a motion to dismiss, the Court must accept the non-movant's factual allegations as true and draw all reasonable inferences in the non-movant's favor. *Twombly*, 550 U.S. at 555. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A complaint must be dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

**Discussion**

Defendants argue Plaintiff's Amended Complaint should be dismissed because (1) Plaintiff was not an "employee" under Title VII, NYSHRL, or NYCHRL; (2) Plaintiff failed to exhaust his administrative remedies under Title VII; and (3) in any event, Plaintiff's claims are meritless. For the following reasons, the Court GRANTS Defendants' motion to dismiss.

4

I. Title VII Claims

A. *Employer-Employee Relationship*

To bring claims under Title VII, Plaintiff must establish he was an "employee" of PSFC. Title VII provides an "employee" is "an individual employed by an employer," and an "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. §§ 2000e(b), (f). In applying this "somewhat 'circular' definition," the Second Circuit uses a two-part test. *United States v. City of New York*, 359 F.3d 83, 91 (2d Cir. 2004). First, courts assess whether a plaintiff "was hired by the putative employer." *Id.* at 92. To prove he was hired, the plaintiff "must establish that [he] received remuneration in some form for [his] work." *Id.* While this remuneration does not need to be a salary, it must "consist of 'substantial benefits not merely incidental to the activity performed.'" *Id.* (quoting *York v. Association of the Bar of the City of New York*, 286 F.3d 122, 126 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002)).

"The first part of the test, i.e., the compensation or remuneration analysis, is treated as 'a threshold issue to determine whether an employee-employer relationship exists.'" *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 396 (S.D.N.Y. 2019) (Oetken, J.). Only after a "plaintiff furnishes proof that her putative employer remunerated her for services she performed" do courts proceed to the second step of the employment inquiry. *Id.* Under the second step, courts consider a thirteen-factor agency test to determine whether an employment relationship existed. *Id.* These factors include "the hiring party's right to control the manner and means by which the product is accomplished[;] the skill required; the sources of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment;

5

the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." *Id.* (quoting *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751-52 (1989)).

    *i.    Remuneration Analysis*

Plaintiff fails to prove he received remuneration from PSFC. As a result, he does not meet the threshold requirement under the Second Circuit's Title VII "employee" inquiry and thus cannot make out his Title VII claims.

Plaintiff does not allege he received a salary or wages from PSFC. Therefore, to satisfy the remuneration requirement, Plaintiff must show he received sufficiently substantial non-salary benefits. *York*, 286 F.3d at 126 ("[B]enefits must meet a minimum level of 'significance,' or substantiality, in order to find an employment relationship in the absence of more traditional compensation") (internal citation omitted). These could include "employee benefits, such as health insurance; vacation; sick pay; or the promise of any of the foregoing." *York*, 286 F.3d at 126 (citation omitted). The Second Circuit has held the following combination of factors to be sufficiently substantial to qualify as remuneration: "(1) a retirement pension, (2) life insurance, (3) death benefits, (4) disability insurance, and (5) some medical benefits." *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 471-73 (2d Cir. 1999).

Plaintiff has not alleged he received any type of insurance, medical benefits, or pension from Defendants. Rather, the sole benefit Plaintiff claims he received through his PSFC membership was the opportunity to purchase groceries at lower prices as compared to other supermarkets in the area.[2]

---

[2] Defendants dispute Plaintiff's allegation that PSFC offers reduced prices to members. *See* Def.'s Reply at 2 ("Plaintiff only receives the benefit of shopping for groceries at Defendants' location as a result of membership, not

As such, Defendants argue Plaintiff's case is similar to *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387 (S.D.N.Y. 2019) (Oetken, J.).  In *Glaser*, a stand-up comedian who brought Title VII claims against a comedy theater alleged he received non-salary benefits in the form of (1) free drinks, (2) free admission tickets to comedy shows, and (3) the opportunity to showcase his work to casting directors.  *Glaser*, 377 F. Supp. 3d at 396.  The court found these alleged benefits too insignificant to qualify as remuneration, explaining: "[t]hese types of compensation do not fit into any of the categories that the Second Circuit has described as indicative of financial benefit sufficient to satisfy the remuneration inquiry."  *Id.*

This Court agrees with Defendants that discounted groceries, like free drinks and admission to shows, provide too insignificant a benefit to qualify as remuneration.  Indeed, *City of New York*, which also involved plaintiffs' receipt of groceries, supports this conclusion.  In *City of New York*, the Second Circuit held welfare recipients who were obliged to participate in New York City's Work Experience Program ("WEP") could qualify as employees under Title VII.  *City of New York*, 359 F.3d at 97.  The WEP participants received cash payments and food stamps, which "equaled the minimum wage times the number of hours the plaintiffs worked." *Id.* at 92.  The plaintiffs also received transportation and childcare expenses, as well as eligibility for workers' compensation. *Id.*

In contrast, the Plaintiff here does not allege PSFC members receive any grants or cash payments to use toward groceries.  Nor is there any allegation the purported grocery discounts are correlated with the number of shifts a member works.  Instead, Plaintiff argues the PSFC sets lower prices than neighboring grocery stores, and therefore all members derive some financial

---

at reduced prices.  Plaintiff alleges without any basis that he receives 'discounted groceries' from Defendants."). However, in considering a motion to dismiss, the Court must accept Plaintiff's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555.

benefit from shopping at PSFC. Moreover, and as already described, Plaintiff alleges no additional benefits like those involved in *City of New York*, such as transportation expenses or workers' compensation eligibility.

In his opposition to Defendants' motion to dismiss, Plaintiff does not argue his receipt of discounted groceries amounts to remuneration under the first step of the "employee" analysis. Instead, Plaintiff attempts to shift focus from the threshold step of the "employee" inquiry—the remuneration analysis—to the second step's thirteen-factor agency test. *See* Pl.'s Mem. at 6-9. Plaintiff states courts undertaking the "employee" analysis focus "on such aspects of the relationship as whether the organization provides some type of monetized benefit, whether the organization controls the consistent duties assigned to the individual in question, and whether the organization sets the schedule of the individual in question." *Id.* at 7. Plaintiff continues, noting "[i]n further addressing whether a 'volunteer' could have a viable claim sounding under Title VII, the federal judiciary determined that the existence of an employer/employee relationship should be governed by common law principles of agency." *Id.*

For these propositions, Plaintiff relies upon inapposite caselaw, including *Nationwide Mutual Insurance v. Darden*, a 1992 U.S. Supreme Court case addressing the definition of "employee" under the Employee Retirement Income Security Act of 1974 ("ERISA"), rather than Title VII, and cases from the Sixth Circuit and the Northern District of Illinois. *See id.* at 6-9; *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992); *Marie v. American Red Cross*, 771 F.3d 344 (6th Cir. 2014); *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991 (N.D. Ill. 2013). While Plaintiff cites *Glaser*, he does not acknowledge the Southern District of New York's application of the threshold remuneration analysis, or otherwise cite controlling Second Circuit caselaw requiring district courts to undertake that analysis.

8

In sum, Plaintiff fails to allege facts sufficient to show he received remuneration from PSFC at all comparable to the benefits received by plaintiffs in *City of New York* or *Pietras*. As such, the Court must dismiss Plaintiff's Title VII claims.

B. Failure to Exhaust

Even if Plaintiff could qualify as an "employee" under Title VII, his federal claims fail for a second reason: Plaintiff did not exhaust his administrative remedies, and he offers no equitable defense to explain his failure.

Title VII requires an aggrieved party "to exhaust administrative remedies before filing suit in federal court." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015). The purpose of this requirement is "to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Id.* (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). Title VII's administrative exhaustion requirement "applies to *pro se* and counseled plaintiffs alike." *Id.* As such, an injured party must file a charge with either the EEOC or the relevant state agency (in New York, the New York State Division of Human Rights ("NYSDHR")), within 300 days of the alleged discriminatory act as a prerequisite to bringing that claim in federal court. *Tillman v. Luray's Travel*, 137 F. Supp. 3d 315, 326 (E.D.N.Y. 2015) (Garaufis, J.). "Failure to timely file such a charge ordinarily results in dismissal of the claim in federal court." *Id.*

However, as Plaintiff correctly points out, administrative exhaustion under Title VII is not a jurisdictional requirement, but is rather a "precondition to bringing [Title VII] claims in federal court." *Fowlkes*, 790 F.3d at 384 (internal citation omitted). In other words, while administrative exhaustion is a mandatory requirement, Title VII's charge-filing requirement is "not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). Accordingly, Title VII's administrative

9

exhaustion requirement is subject to equitable defenses. *Fowlkes*, 790 F.3d at 384. However, these defenses should be applied "sparingly." *Merisier v. Kings Cnty. Hosp.*, 15-CV-2739 (RRM) (RML), 2018 WL 1474176, at *3 (E.D.N.Y. Mar. 23, 2018) (Mauskopf, J.). Ultimately, while a court can consider defenses to a plaintiff's failure to exhaust his remedies, "because [Title VII's charge-filing rule] is mandatory, a failure to satisfy the charge-filing requirement is no less fatal to a plaintiff's Title VII claim than if the rule were jurisdictional." *Areu v. Fox News Network, LLC*, 20-CV-8678 (RA), 2021 WL 4124226, at *7 (S.D.N.Y. Sept. 9, 2021) (Abrams, J.).

Equitable defenses a plaintiff could raise include: (1) futility, which applies where filing a charge would be futile because the administrative agency had previously "taken a firm stand" against the grievant's position; (2) a continuing violation, which allows courts to hear claims that are otherwise time barred when the plaintiff has experienced a "continuous practice and policy of discrimination;" (3) a "reasonably related" violation, which applies where a plaintiff's recent allegations of discrimination are reasonably related to discrimination about which the plaintiff filed an earlier EEOC charge; and (4) equitable estoppel, which applies where the allegedly discriminating party attempts to prevent the injured party from filing an administrative complaint. *See Tillman*, 137 F. Supp. 3d at 326-27; *Merisier*, 2018 WL 1474176, at *3. Plaintiff raises none of these defenses.

The only explanation Plaintiff offers for his failure to file an EEOC or NYSDHR charge is his mistaken "impression that he had, in fact, obtained sufficient notice to proceed under Title VII" based on filing a complaint with the New York City Commission on Human Rights. Pl.'s Mem. at 9. Plaintiff argues dismissing his complaint for failure to exhaust would "inequitably penalize Plaintiff for his lack of [] legal expertise." *Id.* Plaintiff summarizes his interactions

10

with the NYCCHR, stating "[h]e did exactly what was required of him" by giving the NYCCHR "the opportunity to investigate, mediate, and take remedial action," and "could not have known that the information received by the [NYCCHR] may not meet some, artificial imposition of a standard for which he was unaware." *Id.* at 11-12.  However, Plaintiff's interactions were only with the New York City Commission, *not* the relevant state or federal commissions.  Plaintiff did not give either the NYSDHR or EEOC the "opportunity to investigate, mediate, and take remedial action" since he never filed a charge with either of these bodies.  Plaintiff's argument that *pro se* litigants should be afforded leniency and his apparent mistaken belief that he exhausted his administrative remedies are not equitable defenses and are therefore unpersuasive here.

Not only does Plaintiff fail to raise any of the equitable defenses described above, but he also could not do so based on the facts alleged.  Futility does not apply, since race discrimination "is not a position against which the EEOC and NYSDHR have taken a firm stand." *Tillman*, 137 F. Supp. 3d at 330.  The continuing violation doctrine is also inapplicable as the termination of Plaintiff's membership "was a discrete event." *Id.* at 331.  The "reasonably related" defense is inapplicable as well since Plaintiff did not file any earlier EEOC or NYSDHR charge.  Finally, Plaintiff has offered no evidence indicating Defendants attempted to hinder Plaintiff's filing of an administrative complaint. *Id.*

In short, even if Plaintiff were an "employee" for Title VII purposes, Plaintiff could not bring his claims in federal court because he failed to exhaust his administrative remedies and offers no equitable defense.

II.     NYSHRL and NYCHRL Claims

A court "may decline to exercise supplemental jurisdiction" if, among other things, it has already "dismissed all claims over which it has original jurisdiction." *Jian Long Li v. Li Qin*

*Zhao*, 35 F. Supp. 3d 300, 309 (E.D.N.Y. 2014) (Chen, J.). Typically, where all federal claims "'are eliminated before trial,' the relevant factors of 'judicial economy, convenience, fairness, and comity,' which the district court should consider before declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c), will 'point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* Accordingly, having dismissed Plaintiff's Title VII claims, the Court declines to exercise jurisdiction over Plaintiff's remaining state and municipal law claims.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff is granted leave to replead, provided that he can do so in a manner consistent with this opinion. If Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the action will be dismissed.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 10, 2023
Brooklyn, New York